231 P.2d 762

**INDUSTRIAL COMMISSION OF ARIZONA**
**v. J. & J. CONST. CO. et al.**

No. 5440.

Supreme Court of Arizona.

May 21, 1951.

On Motion for Rehearing July 12, 1951.

H. S. McCluskey, of Phoenix (Robert E. Yount and Donald J. Morgan, Phoenix, of counsel), for appellants.

Shimmel, Hill & Hill, of Phoenix, for appellee.

Jennings, Strouss, Salmon & Trask, Phoenix, amicus curiae.

UDALL, Chief Justice.

The Industrial Commission of Arizona, plaintiff-appellant, brought this suit in the superior court against defendant-appellee, J. & J. Construction Co., a co-partnership, seeking to recover premiums on a policy of insurance issued by the commission to the company pursuant to the Arizona Workmen's Compensation Law, A.C.A. 1939, § 56–901 et seq. The premiums were claimed due on wages earned and paid outside of Arizona, and a penalty of ten times the amount of such premiums, together with costs and attorneys' fees were sought. Interpretation of statutory provisions for extra-territorial coverage under the Workmen's Compensation Law, as well as the jurisdiction of the commission to enter the "order" in question, are involved. From a judgment in favor of defendant, plaintiff has appealed.

The undisputed facts giving rise to the instant suit are as follows: The defendant employer is a partnership having its residence in Oklahoma. It has been engaged in transitory work for the past several years in the construction and installation of various rural electrification and power projects in Arizona and elsewhere. In March 1947 while defendant was working in Arizona along the Colorado River, the boundary between Arizona and California, it applied for and received a policy of insurance with the state compensation fund. While some of its employees were hired in other states, at least 25 of them were hired within this state. Premiums on all wages paid by defendant to its employees for work performed within the physical boundaries of Arizona were paid to the commission.

When its work within this state was completed, defendant moved its base of operations across the Colorado River to Blythe, California and took out workmen's compensation insurance on all of its employees under the laws of that state. Labor Code, § 3201 et seq. Although 25 of its employees were originally hired in this state, the record does not disclose whether they were or were not residents of Arizona. A new written contract of employment was

entered into in California with each of defendant's employees individually under date of March 21, 1949. In addition to specifying the wage rate and that the work was to be performed wholly within that state, the contract provided: "All contracts or agreements heretofore made between the employer and employee, of every kind and nature and wheresoever made are hereby cancelled * * *." This step was consistent with defendant's answer to this question on its original application for an Arizona policy: "7. (a) Will employees who have been hired, or are regularly employed, in the state of Arizona be required to work outside this state? (Ans.) No. Explain. Employment of such men will be terminated and only be permitted to work outside the state after they have been rehired outside the state." When the commission found that defendant had entered into these new contracts of employment and had failed to include the California-earned wages of the 25 men who had been originally hired in Arizona on its periodic report and had failed to pay premiums thereon to the Arizona fund, it ordered an audit of the defendant's books and billed defendant for the premiums herein sued for. Counsel for defendant requested a hearing on this payroll audit and the hearing was granted. The seven page transcript shows that the hearing was somewhat informal, i. e., no witnesses were sworn or testified. It consisted mainly of an informal discussion between plaintiff's field auditor, the referee, and counsel for defendant, together with the admission of certain exhibits, to wit: the payroll audits and a copy of the employment contracts heretofore referred to. Twelve days later the commission by an interoffice communication directed their field auditor to "audit (defendant's) payrolls and assess for premium". Nearly three months later, on January 15, 1950, the commission entered a formal order finding that the 25 men in question were employees subject to the provisions of the Arizona Workmen's Compensation Law and covered under the terms of the Arizona policy of insurance. The commission's legal department was instructed to bring suit to collect the premiums found to be due. The commission further found: " * * * that the purported contracts signed by the several employees were a condition of employment and are null and void and of no effect as contrary to the provisions of the statute regulating the status of employer and employee in the State of Arizona." None of the essential statutory steps were taken by defendant to obtain a court review of the reasonableness or lawfulness of this order.

On February 8, 1950 the instant suit for collection of premiums was commenced. The defendant by its amended answer admitted that the commission had, by its order, determined that the 25 persons named in the complaint were subject to the Arizona workmen's compensation law and that their status was not changed by the employment contracts dated March

21, 1949. Plaintiff's motion for a summary judgment was denied. A pre-trial hearing was had, resulting in an order of court setting forth certain undisputed facts. The gist of the commission's order was included therein together with a recitation that the premiums sued for in the sum of $1339.36 represented "total wages paid to said persons at the rate of premium provided for in said policy of insurance. That no part of said amount had been paid by defendant." (The real question is whether any premiums are due and not as to the amount thereof.)

At the trial no witnesses were sworn or testified for either party. The plaintiff's case consisted of placing in evidence an abstract of record containing the proceedings theretofore had before the industrial commission which included the order of January 15, 1950, together with the policy of insurance, payroll reports, audits thereof and premium billing. The defendant rested after offering a written stipulation that the work performed by the men for whom premiums on wages paid were claimed due was performed wholly within the state of California; that the Workmen's Compensation Law of California was a compulsory law (as is Arizona's) and hence defendant was required to insure all of its employees in that state with an insurance carrier authorized to do business there; and that the California law discharges and gives an employer a release from all obligations to his employees in California when he has complied with the workmen's compensation law of that state. No findings of fact were either requested or made, but the court did make certain conclusions of law, the crucial one being that the plaintiff "failed to prove by a preponderance of the evidence, that any premiums for workmen's compensation insurance were due and unpaid from defendants to the state compensation fund. * * *." Plaintiff made an unsuccessful attempt to obtain from the lower court a definite and express finding on several matters, including (a) the validity or invalidity of the purported contracts of employment made in California and their legal effect, (b) the validity of the commission's order of January 15, 1950, and the effect of the failure of defendants to seek a timely court review thereof, and (c) whether contracts of employment made in California can invalidate the effect of the Arizona law. Judgment was then entered that plaintiff take nothing by reason of its complaint and defendant was awarded its attorneys' fees in the sum of $300 plus costs. This appeal followed.

We are somewhat at a loss to know the real basis for the judgment entered by the learned trial court. Obviously however only questions of law are presented, hence we are not bound by the conclusions of either the industrial commission or the trial court but are at liberty to draw our own legal conclusions from the admitted facts. Mountain States Tel. & Tel. Co. v. Sakrison, 71 Ariz. 219, 225 P.2d 707.

144

■ The basis for this suit to collect premiums on wages paid to persons hired in Arizona for work actually performed by them in another state arises under the rare extra-territorial provisions of our statutes. Article 18, Section 8 of the Constitution of Arizona, directed and empowered the legislature to enact a Workmen's Compensation Law. All sections of the code hereafter cited will refer to A.C.A.1939. Sec. 56–943 of such Act provides in part that: "If a workman *who has been hired* or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state *even though such injury was received outside of this state.* * * *" (Emp. sup.) Section 56–931 requires payment of compensation to every employee who is injured, or to his dependents if he is killed, "by accident arising out of and in the course of his employment, *wheresoever such injury has occurred* * * *." (Emp. sup.) Article 18, Section 3 of the constitution makes it unlawful for any person to require of its servants or employees *as a condition of their employment, or otherwise,* to contract to release their employer from liability on account of personal injuries while in such employment, and section 56–977 provides in part that any agreement by an employee to waive his rights to compensation shall be void. It thus appears to be the clear legislative intent that every person—with exceptions not material here—who has been hired in Arizona to perform work for an employer in the regular and usual course of his business, whether in intrastate, interstate or foreign commerce, secs. 56–931, 56–943 and 56–965, shall be insured under a policy of insurance issued or approved by the Industrial Commission of Arizona. Secs. 56–933, 56–922, and 56–932. The employer and his insurance carrier are made subject to the jurisdiction of the commission and the courts of Arizona for (a) the payment of compensation for injuries or death by accident arising out of and in the course of employment "wheresoever such injury has occurred" secs. 56–931 and 56–943 and, (b) the payment of premiums, sec. 56–922, at rates to be fixed by the commission for such insurance, sec. 56–923, payable at such times as it may determine, sec. 56–922, under rules adopted by the commission. Sec. 56–920. See Ocean Accident & Guarantee Corp. v. Industrial Comm., 32 Ariz. 275, 257 P. 644; Corral v. Ocean Accident & Guarantee Corp., Ltd., 42 Ariz. 213, 23 P. 2d 934; Red Rover Copper Co. v. Industrial Comm., 58 Ariz. 203, 118 P.2d 1102, 137 A.L.R. 740; O'Neill v. Martori, 69 Ariz. 270, 212 P.2d 994; Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915. However, to collect delinquent premiums due it the commission is relegated by statute to the filing of a civil suit, sec. 56–948; O'Neill v. Martori, supra, which course was followed in the instant case.

■■ It is argued by defendant, without a cross-assignment of error or any

evidence upon which to predicate such argument, that the order of January 15, 1950, upon which the commission relies was made without notice to it. Unquestionably, if plaintiff's order in the instant case had not been served upon defendant such lack of notice would have constituted a violation of the due process clause of both the federal and state constitutions and such an order would have been subject to collateral attack. But it is significant in this regard that defendant in the court below did not rely upon lack of notice as a defense. Public officers are presumed to do their duty. Altman v. Pace, 49 Ariz. 231, 65 P.2d 1164; Donaldson v. Sisk, 57 Ariz. 318, 113 P.2d 860. Under the rules of the commission, service of an order may be made in any of three prescribed methods. See General Rules of the Industrial Commission of Arizona, Rules 42, 43, and 44. In the absence of evidence to the contrary, it is presumed that such service was made.

█ Defendant also contends that Arizona should give the same faith and credit to the contracts in question that California does and that failure of Arizona to do so would be a clear violation of the full faith and credit clause of the federal constitution. Appellate courts of not less than 34 states, as well as the United States Supreme Court, have clearly recognized the power of the respective states to regulate the status of employer and employee, and to enforce the public policy of the state, as it relates to workmen's compensation for employees engaged in interstate or foreign commerce—except where the United States has a different rule. See Ocean Accident & Guarantee Corp. v. Industrial Comm., supra; Alaska Packers Ass'n v. Industrial Accident Comm., 294 U.S. 532, 55 S. Ct. 518, 79 L.Ed. 1044; Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L. R. 1179; Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Pacific Employers Ins. Co. v. Industrial Accident Comm., 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Industrial Indemnity Exchange v. Industrial Accident Comm., 80 Cal.App.2d 480, 182 P.2d 309; and see generally Stumberg, Conflicts of Laws, ch. 7, p. 212 et seq., also Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S. Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413, a case whose effect has been greatly limited by subsequent decisions.

█ The status of employer-employee in the instant case admittedly arose in the first instance in the state of Arizona and thus was regulated by Arizona law. The facts here, as found by the commission, show that the contracts were required by the employer as a condition of employment and were made solely to avoid the payment of premiums to the Arizona fund. The plaintiff's order did not in any way purport to prohibit the parties to the contracts from taking advantage of the California Work-

men's Compensation Act. No question of "full faith and credit" is presented by this appeal, for what is here determined is simply that the status which was created in Arizona cannot by contract of the parties, even though made without the state, terminate, under these circumstances, the status in which the state of Arizona is an interested third party.'

The wisdom of this extra-territorial coverage under the workmen's compensation law and the question of whether it creates an onerous burden on the employer by requiring it to pay premiums in two states and the fact that it may have repercussions beyond state lines are legislative matters beyond our province.

Plaintiff contends that it not only is entitled to the premiums sued for but in addition thereto is entitled to a penalty of ten times the amount of premiums due as provided under section 56–977. This court at various times has condemned certain devices adopted by employers to escape the public policy of the state regarding workmen's compensation as reflected in its constitution, statutes, and decisions. See Ocean Accident & Guarantee Corp. v. Industrial Comm., supra; Red Rover Copper Co. v. Industrial Comm., supra; Whipple v. Industrial Commission, 59 Ariz. 1, 121 P.2d 876; and Industrial Commission v. Meddock, 65 Ariz. 324, 180 P.2d 580. It should be noted that in the instant case, as distinguished from some of the others, there was no secretive attempt

to evade the Arizona law; the acts were done openly in an attempt to legally avoid the provisions of Arizona's Workmen's Compensation Act pertaining to the payment of premiums. From the correspondence between the parties, which appears in the file, it is obvious that a foundation was laid for a test suit and that there was no misrepresentation on the part of defendant as to its payrolls, hence we hold that plaintiff is not entitled to the penalty, for it would be manifestly inequitable for it to be permitted under the circumstances to recover a penalty of ten times the amount of premiums claimed due. For this reason it is unnecessary to pass upon the related question as to who has the right to recover such penalties, the attorney general in the name of the state, or the commission, sec. 56–977.

The crux of the matter here presented hinges on the jurisdiction of the commission to enter its order of January 15, 1950, determining the "status" of the 25 employees in question. Defendant vigorously challenges the power or authority of the commission to hold the hearing (which defendant requested) and to make the order determining the amount of insurance premiums due it for wages paid in California. Defendant argues that the commission "exceeded its lawful jurisdiction, and such order and the proceedings leading thereto are null and void. Such proceedings and order do not bind an employer or constitute competent evidence in an action to recover premiums."

On the other hand it is the contention of plaintiff that the commission had the duty, in order to protect the state insurance fund, to collect premiums on the wages of employees hired in Arizona, though their work was to be performed without the state, so that funds would be available to meet the contingent liability imposed under Arizona law for injuries that might be received by such employees. West Chandler Farms Co. v. Industrial Commission, 64 Ariz. 383, 173 P.2d 84. (It seems that Arizona's compensation law is more generous in its terms than that of its neighboring states and that the commission is anticipating that an injured employee will elect to accept benefits under Arizona's Act to which he is lawfully entitled.) The plaintiff further maintains that its order was validly entered, became res judicata and could not be collaterally attacked by defendant in this proceeding.

There can be no doubt as to the commission's right to issue "orders", which term is defined by section 56-930 as follows: " 'Order' shall mean and include any rule, regulation, direction, requirement, standard, determination or decision of the commission * * *." and such orders are subject to court review, sec. 56-914. A partial list of cases from this jurisdiction involving "orders" entered by the commission, or its right to enter same, include the excellent case of Holmes v. Osborn, 57 Ariz. 522, 115 P.2d 775; and Industrial Commission v. Meddock, supra; Gene Autry Productions v. Industrial Commission, 67 Ariz. 290, 195 P.2d 143; Haggard v. Industrial Commission, supra, and O'Neill v. Martori, supra.

Apparently our recent decision in the last mentioned case has been the cause of some confusion as strangely enough both parties partially rely upon it to support diametrically opposed positions. We therefore feel it necessary to clarify the final holding which reads: "The Commission having exceeded its jurisdiction in issuing the 'orders' in question, the lower court's judgment vacating and setting them aside was in all respects proper." [69 Ariz. 270, 212 P.2d 998.] (Emp. sup.) In that case we were dealing with several orders and findings of the commission, i. e., (a) whether certain truckers and other persons were employees of Martori Bros. or were independent contractors, (b) amount of premiums due the commission and (c) summary orders amounting to a "writ of execution" suspending the benefits of the policy until its orders were complied with. In that case timely steps were taken to obtain a court review of the lawfulness and reasonableness of such orders. The case was submitted upon the record made before the commission; and the trial court, as it had a right to do, upon the evidence before it, reached a conclusion differing from that of the commission as to (a) and (b) supra, and correctly determined that

the orders under (c) were void as being entered without jurisdiction. It therefore set all of the "orders" aside. In sustaining its judgment we inadvertently used the language above quoted which implies that the commission was without jurisdiction to *issue any of the orders under review,* when in fact the statement as to lack of jurisdiction was intended to apply only to those orders under (c) having to do with the summary method for collection of premiums without suit. In all other respects we reaffirm the decision rendered in the Martori case.

■ We hold that the commission had jurisdiction to enter the order in question here and since no timely direct attack was made thereon by defendant in the manner prescribed by section 56–914, the order became res judicata and was not subject to defendant's collateral attack. The trial court erred in not accepting the conclusive showing made by the commission and in failing to enter judgment for it.

The judgment is reversed with directions to enter judgment for plaintiff as prayed for except as to the claimed penalties.

Judgment reversed with directions.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.

On Motion for Rehearing.

UDALL, Chief Justice.

■ Motion for rehearing was filed by the appellee upon the ground that the construction we gave to the pertinent sections of our Workmen's Compensation Act and to article 18, section 3 of the constitution of Arizona, makes them repugnant both to the due process and the full faith and credit clauses of the federal constitution. Amend. 14; art. 4, § 1. These matters present no question not fully considered heretofore. Counsel appearing amicus curiae have, however, in addition challenged the correctness of the following statement in the closing part of our opinion as to commission's order *becoming res adjudicata, viz.:*

"We hold that the commission had jurisdiction to enter the order in question here and since no timely direct attack was made thereon by defendant in the manner prescribed by section 56–914, the order became res judicata and was not subject to defendant's collateral attack. The trial court erred in not accepting the conclusive showing made by the commission and in failing to enter judgment for it."

Rehearing was granted and after a careful review of the whole matter we are convinced that there is no merit to appellee's motion. We concede however that our *holding, supra, to the effect the commission's* order became res judicata was erroneous. The paragraph quoted above is therefore stricken from the opinion heretofore rendered and the following statement is substituted therefor, *viz.:*

"We hold that the commission had jurisdiction to enter the order in question here and since defendant did not directly attack the order by petitioning the commission for a hearing thereon in the manner prescribed by section 56–908, the order, under section 56–909, was 'conclusively presumed to be just, reasonable, and lawful' and was not subject to defendant's collateral attack. The trial court erred in not accepting the conclusive showing made by the commission and in failing to enter judgment for it."

In all other respects the original opinion is affirmed.

STANFORD, PHELPS, DE CONCINI, and LA PRADE, JJ., concur.