Gayle STOVER, Karmin Heninger, Marlys Frederick, Misty Frederick, and Carrie Jones, Plaintiffs,

and

IMT Insurance Company, Intervenor Plaintiff and Appellant,

v.

Lewis Edward CRITCHFIELD, Defendant,

and

Budget Rent–A–Car Corporation, Defendant and Appellee.

No. 18295.

Supreme Court of South Dakota.

Argued Dec. 1, 1993.

Decided Jan. 12, 1994.

Richard P. Tieszen, Thomas H. Harman, Tieszen Law Office, Pierre, for intervenor plaintiff and appellant.

Kennith L. Gosch, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for defendant and appellee Budget Rent-a-Car Corp.

WUEST, Justice.

This is an intermediate appeal from the circuit court's decision on cross motions for summary judgment. We affirm.

## FACTS

On March 22, 1989, Budget Rent-a-Car (Budget) rented a truck to Lewis Critchfield (Critchfield). The rental transaction took place at the airport in Boulder, Colorado. Critchfield drove the truck to Wisconsin and returned to Colorado via Interstate 90. While driving through South Dakota on that return trip, Critchfield was involved in an accident[1] with a car owned and driven by Gayle Stover and carrying four other passengers. The accident resulted in bodily injuries to Stover and her passengers (hereinafter referred to collectively as "Stover"), as well as property damage to Stover's vehicle. Stover filed a complaint against Critchfield, sounding in negligence and seeking recovery for damages resulting from the accident. Represented by Budget, Critchfield filed an answer stating several defenses, denying the allegations of the complaint, and alleging that Stover was contributorily negligent more than slight, sufficient to bar recovery. Gayle Stover had a contract of insurance with IMT Insurance Company (IMT) and IMT was provided with notice that a claim against the uninsured or underinsured motorist coverage was likely.

In the course of Budget's representation of Critchfield, a settlement was offered to Stover in the amount of fifty thousand dollars, and releasing both Critchfield and Budget from any further liability. Because Stover indicated that a claim would be asserted against IMT under her underinsured motorist coverage for damages beyond the amount of the settlement, IMT filed a motion to intervene as a party plaintiff, and to join Budget as a party defendant in the action. Specifically, IMT sought to become a party to pursue the issue of whether Budget, as owner of the truck that collided with the Stover vehicle, could legally limit its liability through the rental agreement with Critchfield. The court granted the motion to intervene; Stover and IMT filed an amended complaint, including Budget as a defendant. The amended complaint stated that Budget was liable for Stover's damages arising from the accident based solely on Budget's ownership and permitted use of the vehicle, as well as of allegations of negligent entrustment, failure to properly instruct, and negligent maintenance of the vehicle. Additionally, IMT filed a complaint for declaratory judgment, asking the court to determine the relative rights and liabilities of the parties under the rental agreement and Budget's certificate of self-insurance. Acting upon the parties' motions for summary judgment, the court held in favor of Budget on the declaratory judgment complaint, but denied Budget's motion to be dismissed from the action. Specifically, the court held that Stover and IMT's claim based solely upon a theory of vicarious liability through ownership of a vehicle under state financial responsibility laws should be dismissed. It is from this order that Stover and IMT bring an intermediate appeal.

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, our task is "to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989). As the parties have no dispute

---

**1.** According to the state trooper's report, Critchfield passed a sand truck while westbound on I–90. As he completed his pass, he pulled into the driving lane and noticed that the Stover vehicle was driving at a slow speed. Due to the icy condition of the roadway, Critchfield was unable to slow down and collided with the rear end of Stover's vehicle. The Stover vehicle spun and came to rest in the north ditch. Critchfield was charged with following too close. At this time, there has been no finding that Critchfield was negligent in the operation of Budget's rental truck. The summary judgment order entered below, through acquiescence of the parties, is premised upon the assumption that Critchfield's driving will ultimately be found to be the legal cause of the collision.

regarding the facts related to this appeal, we are faced with a question of law. We review conclusions of law de novo. *State v. Harris,* 494 N.W.2d 619, 622 (S.D.1993) (citing *Rusch v. Kauker,* 479 N.W.2d 496, 499 (S.D.1991)). The question presented in this case—whether Budget's liability for damages is limited to fifty thousand dollars—must be decided in light of the contract between Critchfield and Budget, and the statutes pertinent to this action. Matters of statutory construction are questions of law. *Harris,* 494 N.W.2d at 622 (citing *Vellinga v. Vellinga,* 442 N.W.2d 472, 473 (S.D.1989); *Whalen v. Whalen,* 490 N.W.2d 276, 280 (S.D.1992)). Likewise, construction of a written contract is also a question of law. *Dirks v. Sioux Valley Empire Elec. Ass'n,* 450 N.W.2d 426, 427–28 (S.D. 1990) (citing *Delzer Constr. Co. v. South Dakota State Bd. of Transp.,* 275 N.W.2d 352, 355 (S.D.1979)).

### DISCUSSION

Budget states that the truck driven by Critchfield is self-insured[2] for the first $300,000 in damages. Further, the vehicle was covered under a separate policy providing excess limits of $1.7 million; Budget states that this policy covers "Budget only," asserting that the policy does not provide liability coverage for Critchfield as the operator of the vehicle. The rental agreement between Critchfield and Budget contained provisions regarding liability insurance provided by Budget to Critchfield, stating in pertinent part:

> Renter and any Authorized Driver shall, while operating the Vehicle, be provided

with liability coverage ... in accordance with the requirements of a qualified self-insurer ... for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits: –coverage limits imposed by the state financial responsibility law *where this rental transaction takes place;*

(Emphasis added). As stated previously, the rental transaction took place in Colorado. The Colorado Motor Vehicle Financial Responsibility Act states, in pertinent part:

> Every judgment ... shall be deemed satisfied: ... (b) When, subject to said limit of twenty-five thousand dollars as to one person, the sum of fifty thousand dollars has been credited upon any judgment rendered in excess of that amount for or on account of bodily injury to or the death of more than one person as the result of any one accident;

COLO.REV.STAT.ANN. § 42–7–403(1)(b) (1984).[3]

Stover and IMT ask us to find that Budget, as owner of the vehicle driven by Critchfield, is vicariously liable for damages resulting from Critchfield's collision with Stover. We note the general rule regarding liability of a vehicle owner for the negligence of an operator:

> With few exceptions, at common law, the owner of a motor vehicle is not liable for its negligent operation by another using it with his permission, unless the operator was acting as his agent or servant, or unless the owner was present in the vehicle and maintained some control over its

**2.** Budget applied for and received a "Self–Insurance Certificate" issued under the laws of the state of Colorado. *See* COLO.REV.STAT.ANN. § 42–7–501 (1984).

**3.** The briefs and arguments of the parties rely entirely on South Dakota statutes regarding the Financial Responsibility of Vehicle Owners and Operators—SDCL ch. 32–35. This chapter provides that proof of financial responsibility may be provided by a certificate of self insurance, "supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amount that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-

insurer." SDCL 32–35–64. Further, the chapter provides that, "An owner's policy of liability insurance.... shall insure the person named therein and any other person as insured, ... subject to limits ... as follows: ... [subject to a twenty-five thousand dollar limit for one person,] fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident[.]" SDCL 32–35–70. Thus, South Dakota financial responsibility statutes provide for the same amounts of liability coverage as do the Colorado statutes. However, since Budget relies on its agreement with Critchfield to limit the operator's liability coverage to $50,000, we must also look to Colorado law to determine whether any basis exists to extend liability to the owner for the operator's negligence.

operation or entrusted its operation to an incompetent or unfit person, or unless the owner and driver were engaged in a joint enterprise or partnership activity. In other words, liability for the negligent use of a motor vehicle cannot, generally, be predicated against the owner at common law merely because of the ownership of the vehicle.

7A AM.JUR.2d *Automobiles and Highway Traffic* § 641 (1980) (footnotes omitted).

The Colorado Motor Vehicle Financial Responsibility Act makes clear the legislative intent of that enactment: "[T]o induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." However, the Colorado General Assembly has not included any specific enactment as part of the financial responsibility statutory scheme that would impose vicarious liability on vehicle owners for the negligence of permissive operators. Additionally, the Colorado courts do not appear to have interpreted that state's financial responsibility act as imposing liability based on ownership alone.

In South Dakota, we have recognized limited bases for imposing vicarious liability on the vehicle owner for an operator's negligence. Our prior decisions have acknowledged the concept of negligent entrustment of a vehicle, stating that the owner of a vehicle "may be guilty of negligence if he permits an incompetent, inexperienced, and knowingly reckless and accident prone person to drive[.]" *Robe v. Ager,* 80 S.D. 597, 606, 129 N.W.2d 47, 51 (1964) (citing *Bock v. Sellers,* 66 S.D. 450, 285 N.W. 437 (1939)). *See also Arbach v. Gruba,* 89 S.D. 322, 330, 232 N.W.2d 842, 846 (1975). We have also generally recognized that, "Imputed negligence means that by some legal relationship existing between two or more persons the negligence of one is charged to another." *Fredrickson v. Kluever,* 82 S.D. 579, 581, 152 N.W.2d 346, 347 (1967) (refusing to impute the negligence of an operator of a motor

vehicle to the owner where the elements necessary to constitute a joint enterprise were lacking). The negligence of an agent may be imputed to a principal;[4] however, where the relationship is that of a bailor and bailee, the " 'general rule is that a bailor is not liable to third persons for their injuries resulting from the bailee's negligent use of the property bailed.' " *Southard v. Hansen,* 376 N.W.2d 56, 58 (S.D.1985) (quoting *Mimick v. Beatrice Foods Co.,* 167 Neb. 470, 93 N.W.2d 627, 631 (1958)). Thus, our prior decisions do not support judicial establishment of a new basis of liability for damages based on mere ownership of a vehicle, without more.

Our research compels acknowledgment of the search for a basis to impose liability upon a vehicle owner. As discussed by one commentator:

> The enormous annual traffic accident toll, together with the frequent financial irresponsibility of the individual driving the car, has led to a search for some basis for imposing liability upon the owner of the vehicle, even though he is free from negligence himself. Bluntly put, it is felt that since automobiles are expensive, the owner is more likely to be able to pay any damages than the driver, who may be entirely impecunious; and that the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class. Beyond this, also, is the feeling that one who originates such a danger by setting the car upon the highway in the first instance should be held responsible for the negligence of the person to whom he entrusts it; and also the idea that the assumption of such responsibility is a fair price for the owner to pay for the privilege of having the car operated, at the cost of the taxpayers, over the expensive highways of the state.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 73 at 522–23 (5th ed. 1985). This view has led to statutory enactments in a number of states imposing liability on vehicle owners for damages caused by

---

4. The rental agreement between Critchfield and Budget states: "Renter shall not be considered the agent or employee of the renting location, Budget or Sears for any purpose whatsoever."

their vehicles, even where operated by others.[5] Some such statutes are specifically directed toward situations involving rented vehicles, like that presented here.[6] Other states with "no-fault" insurance systems find owner liability within those statutory schemes. In interpreting these statutes in regard to a rented truck involved in an accident, one court stated:

> U–Haul is in the business of putting rental vehicles into the stream of commerce, where they are foreseeably exposed to accidents. Because appellant is profiting from a sometimes risky business enterprise, it cannot characterize itself as an unwitting victim of someone else's use of its vehicles.... U–Haul's [home] office, in establishing national procedures for rental agents, can always put tighter restrictions on who may rent and drive U–Haul vehicles.

*U–Haul Co. of East Bay v. State Farm Mutual Auto. Ins. Co.*, 616 A.2d 1264, 1266 (D.C.App.1992) (finding owner liability for damages caused by rented truck, interpreting District of Columbia no-fault insurance statutes). *See also Milbank Mut. Ins. Co. v. United States Fidelity and Guar. Co.*, 332 N.W.2d 160 (Minn.1983) (interpreting section of Safety Responsibility Act, MINN.STAT.ANN. § 170.54, in conjunction with Minnesota no-fault insurance statutes). Our research fails to uncover cases in other jurisdictions where state financial responsibility laws similar to our own statutes have been interpreted by the courts as imposing liability on the owner.

Thus, it appears that to expand the bases for liability to include ownership of a vehicle, the remedy must lie with the legislature. As written, our statutes impose only financial *responsibility*, not *liability*. Although Stover and IMT urge that such authority presently exists in vehicle financial responsibility laws, we agree with the lower court's discussion of the issue in its memorandum decision:

> If liability is imposed on Critchfield for his negligent operation of the vehicle, Budget, as the owner and self-insurer, is liable to pay damages up to the insurer's statutory limit. Beyond that limit, there is no basis, solely through South Dakota's financial responsibility laws, to impose liability based on Budget's ownership of the vehicle. Any further liability must arise out of Budget's own negligence, [based] on a theory of negligent entrustment, negligent maintenance ... or, as a result of some special relationship between Budget and Critchfield that would give rise to vicarious liability. Based solely on the theory of vicarious liability through ownership under the financial responsibility laws, Budget is entitled to summary judgment in this declaratory judgment action.

This court is not a legislative body. We are reminded of our earlier statement regarding judicial legislation:

> While it may be elementary, it behooves us to acknowledge that as a result of constitutional provisions distributing the powers of

---

5. A number of these enactments are found in states of our region. *See, e.g.,* MICH.STAT.ANN. § 9.2101 (Callaghan 1991) [Mich.C.L.A. § 257.-401] (stating in part that, "The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of [the] motor vehicle ... [provided it] is being driven with his or her express or implied consent or knowledge."); IOWA CODE ANN. § 321.493 (West 1985) (stating in part that, "In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage."); IDAHO CODE § 49–2417 (Michie 1988) (stating in part that "Every owner of a motor vehicle is liable and responsible for the death of or injury to a person or property resulting from negligence in the operation of his motor vehicle ..."); MINN.STAT.ANN. § 170.54 (West 1986) ("Whenever any motor vehicle shall be operated within this state, by any person other

than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.").

6. *See, e.g.,* NEB.REV.STAT. § 39–6,193 (Reissue 1988) (stating in part that, "The owner of any leased truck ... shall be jointly and severally liable with the lessee and the operator thereof for any injury to or the death of any person or persons, or damage to or the destruction of any property resulting from the operation thereof in this state."); CONN.GEN.STAT. § 14–154a (1993) (stating that, "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.").

government among three departments, the legislative, executive, and judicial, courts have no legislative authority, and should avoid judicial legislation, a usurpation of legislative powers, or any entry into the legislative field. Thus it has been said that whatever its opinion may be as to the wisdom of a statute or the necessity for further legislation, the duty of a court is to apply the law objectively as found, and not to revise it.

*In re Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D.1984) (citing 73 AM.JUR.2d *Statutes* § 179 (1974)). We must accept what the legislature has said—and has not said—rather than attempt to rewrite the law to conform with "what we or others think it should have said." *Id.* at 885 (citing *Elk Point Indep. Sch. Dist. No. 3 v. State Comm'n on Elementary and Secondary Educ.*, 85 S.D. 600, 605, 187 N.W.2d 666, 669 (1971)).

In summary, we find no existing basis to impose vicarious liability on the owner of a vehicle based on financial responsibility laws. In its contract with Critchfield, Budget agreed to provide him with liability insurance of up to $50,000 per occurrence, and stands ready to satisfy that obligation. Stover must look to other sources to recover any additional damages.

The judgment is affirmed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.